THE STATE EX REL. HARRIS ROBINSON, Administrator of Estate of ELIJAH ROBINSON, v. FRANCIS H. TRIMBLE ET AL., Judges of Kansas City Court of Appeals, and JESSE C. RHOADES.—43 S. W. (2d) 1044.

Division One, November 20, 1931.

*Clif Langsdale* for relator.

*John D. Wendorff* for respondents.

80

GANTT, P. J.—This came to me on reassignment. Certiorari to quash an opinion of the Kansas City Court of Appeals in Rhoades v. Robinson, Administrator of the Estate of Elijah Robinson, Deceased, (No. 16, 657). The facts follow:

Claude M. Kackley, an attorney, had office privileges in the law offices of Judge Elijah Robinson in Kansas City, Missouri. The judge prosecuted many of the cases brought to the office by Kackley. In 1915 Kackley was employed by Jesse C. Rhoades, on a contingent fee of fifty per cent of the amount recovered, to prosecute a suit for damages against the Chicago-Great Western Railroad Company for malicious prosecution. He brought this case to Judge Robinson. The suit was prosecuted by Judge Robinson, Claude M. Kackley and John J. Hess, an attorney of Council Bluffs, Iowa, who defended Rhoades in the criminal case alleged to have been instigated by said railroad. Kackley agreed to an equal division of the fee among the three attorneys. The case was tried and on June 15, 1916, Rhoades had judgment against the railroad company for $7,000. Thereafter Rhoades went to France with the American Expeditionary Forces. He returned to this country, and on January 23, 1919, sent a telegram from Delta, Iowa, to Kackley in Kansas City, Missouri, as follows:

"Send any communication to Delta, Iowa. Jesse Rhoades."

Thereafter, and March 11, 1919, he wrote a letter from Council Bluffs, Iowa, to Kackley in Kansas City, as follows:

"Dear Mr. Kackley:

"In answer to your letter of Feb. 28, I would say that I am not very anxious to sell judgment but it might not hurt anything for you to ask the party in Richmond what they are willing to pay me for

my interest in it and if it is favorable I might consider selling. Get them to make an offer and then I will let you know' what I think about it.

"I returned to work the 3rd of this month (Jan. 1919) and it seems natural to get back into harness again after being out of it for almost two years.

"I would like to come to K. C. and spend a few days with you but do not expect that I will be able to for three or four months as I feel that I had ought to work a while before I go visiting any more.

"I am feeling good at present but there are times when my lungs cause me considerable but I think that it will wear off in time and I will be in as good condition as ever. Well Kackley as it is after my usual bed time I think I had better close for this time and hit the shucks or I will not be able to do my work.

"Your friend,<br>"Jesse Rhoades.

"159 Graham Ave., Council Bluffs, Iowa."

Thereafter, and on June 25, 1919, Judge Robinson advanced to Rhoades $700. This was secured by Rhoades assigning to Judge Robinson his interest in the judgment.

On appeal the judgment of the circuit court in favor of Rhoades was affirmed for $4,000, and on July 31, 1920, a draft in payment of the judgment amounting to $4983.35 was delivered to Judge Robinson, who entered satisfaction on the record. Thereupon Judge Robinson notified Hess by letter of the collection of the judgment and requested him to come to Kansas City for distribution of the money. It was shown by letter from Hess to the administrator, admitted in evidence without objection, that Hess came to Kansas City, and on August 13, 1920, Judge Robinson paid to Hess his fee, and at the same time paid Kackley his fee. The Judge died in September, 1922. It had been his practice to place cancelled checks and receipts in cases in the file of the case. Within two weeks after his death, Kackley took from the office of Judge Robinson all of the files and papers in the case of Rhoades v. Railroad. Although he was interested in many cases tried by Judge Robinson, he only removed from the office the file in that case. About a year thereafter Kackley referred Rhoades to an attorney who filed this claim in the probate court against the estate of Judge Robinson. The administrator, who was the son of Judge Robinson, did not know these files had been taken from the office. In the meantime he, as administrator, obtained judgment against Kackley for $1,000. Kackley kept the files and papers at his home for two years and until he was ordered by subpoena duces tecum to produce them in the probate court on the hearing of this claim. On a trial in said court the claim was denied. Rhoades appealed. On trial in the circuit court before a jury, the

claim was again denied. The Kansas City Court of Appeals reversed the judgment and remanded the cause for certain errors. [6 S. W. (2d) 1007.] On a re-trial in the circuit court before a jury, the claim was again denied. The Kansas City Court of Appeals reversed the judgment and remanded the cause. It is the opinion of said court on that submission which is here for review.

In the circuit court the administrator by answer admitted that Judge Robinson collected the judgment and satisfied the record. Further answering, he alleged the employment of Kackley by Rhoades, and the engagement of Judge Robinson and Hess as attorneys in the case, the loan of $700 to Rhoades by Judge Robinson, the payment by Judge Robinson to Kackley, Hess and Rhoades of all sums of money due them from the money collected on the judgment. Further answering, he alleged that after the death of Judge Robinson, Rhoades and Kackley connived and conspired together to cheat and defraud the estate by setting up this claim, in furtherance of which Kackley took from the office said files.

At the trial plaintiff testified and rested his case. Kackley and the administrator testified as witnesses for defendant. The court instructed the jury that the burden was on defendant to show payment. The opinion ruled error on the admission of evidence, the giving of an instruction requested by defendant, the refusal of instructions requested by plaintiff, and also ruled there was no substantial evidence tending to show payment.

Relator (defendant) does not controvert the facts as found in the opinion, but contends that the application of the law by respondents to said facts is in conflict with certain decisions of this court.

In Baker v. Stonebreaker's Administrators, 36 Mo. 211, l. c. 214, 216, we said:

"A presumption of payment, as a matter of fact, may arise from a great lapse of time, falling short of the full period prescribed by statute as a ground for a conclusive or a disputable presumption of law, taken together with other additional circumstances tending to show payment, as furnishing circumstantial and presumptive evidence and a basis of fact proved, from which a jury may be warranted in inferring the fact of payment. . . . It is well settled also, that when there is some evidence of this character which is competent to go to the jury, it is a question of fact for the jury to decide. . . . The effect of lapse of time alone will be in proportion to the number of years elapsed, and the force of other circumstances that may be necessary must be measured on a diminishing scale; and as the full period approaches, a proportionably less weight of additional evidence must be taken as sufficient."

And in McFaul v. Haley, 65 S. W. 995, l. c. 998, we also said:

"But whilst the probate court, or the circuit court on appeal, cannot go behind the judgment to inquire into the merits of the cause of action, yet the executor may defeat the claim if he can establish that it has been paid, or for any cause since its rendition has ceased to subsist as a valid demand. And in a trial of that issue he is not limited to proof of a positive act of payment, but he may show, if he can, circumstances and conditions from which the probabilities of payment are such as carry reasonable conviction that the judgment has been satisfied. The law adjusts itself to the circumstances of the case. The lapse of time, the death of the main witness, and perhaps other witnesses, justify the triers of the fact in drawing conclusions from probabilities when the positive fact is not susceptible of more direct proof.''

Now, the facts as found in the opinion disclose that the costs and expenses of the litigation and the attorneys' fees were promptly paid by Robinson; that it was his practice to place cancelled checks and receipts in cases in the file of the case; that plaintiff, after returning from France, notified Kackley of his return and where he was located; that he was afterwards in communication with Kackley about the judgment; that plaintiff was in need of money; that he remained silent for three years after Robinson had paid said costs, expenses and attorneys' fees; that he remained silent for one year after the death of Robinson; that Kackley within two weeks after the death of Robinson removed the file in the case from the office of Robinson; that when the file was produced in the probate court it contained no evidence of payment to Kackley or plaintiff; that the administrator did not know the file had been removed from the office until after this claim was filed in the probate court, and that Kackley assisted the plaintiff in procuring the services of an attorney to file the claim.

The foregoing facts and circumstances clearly constitute substantial evidence of payment within the rule announced in the decisions of this court above mentioned. Respondents' holding to the contrary is therefore in conflict with them.

The opinion is also in conflict with decisions of this court holding that an issue supported by substantial evidence should be submitted to the jury.

Other questions ruled are so related to the question considered that we think the opinion should be quashed. It is so ordered. All concur.